U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

AUG 30 2016

TONY R. MOORE, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| SANAT V. SANGHANI, MD, LLC,<br>Plaintiff | CIVIL ACTION NO. 1:15-CV-02887 |
| VERSUS | CHIEF JUDGE DRELL |
| UNITED HEALTHCARE<br>SERVICES, INC.<br>Defendant | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

This lawsuit concerns a claim for benefits under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA"). Before the Court are two parallel motions: (1) a Motion to Dismiss or, in the Alternative, For Summary Judgment (Doc. 10) filed by Defendant, United Healthcare Services, Inc. ("United"); and (2) a Motion for Leave to Amend Complaint (Doc. 15) filed by Plaintiff, Sanat V. Sanghani, MD, LLC ("Sanghani"). To resolve these Motions, the Court must determine whether ERISA preempts state law claims in Sanghani's original Petition to Recover Healthcare Benefits Pursuant to La. R.S. 22:1821 (the "Petition") (Doc. 1-2), and in his proposed Amended Complaint (Doc. 13, p. 4; Doc. 15-1).

Sanghani admits his claim under La. R.S. 22:1821 – the only claim in the Petition – is preempted by ERISA. But Sanghani argues that his claim under La. C.C. art. 2315 – added in his proposed Amended Complaint – is not preempted by ERISA.

1

Both Motions should be granted. Sanghani's claim under La. R.S. 22:1821 should be dismissed with prejudice as preempted. But ERISA does not preempt Sanghani's independent claim under La. Civ. Code art. 2315. Sanghani should be allowed to amend to assert that claim, along with his claim for benefits under 29 U.S.C. § 1132(a)(1)(B).

I. **Background**

Sanghani filed the Petition in Alexandria City Court in Rapides Parish, Louisiana. Sanghani alleges he provided medical services to Sandra Richards ("Richards"). Richards is a participant covered by a United health insurance policy. Richards purportedly assigned the right to recover benefits to Sanghani.

United uses a network of "preferred providers." When a preferred provider is not available or conveniently located, United may grant "gap approval" to an available provider who is not within the network. United would then pay the "gap-approved" provider the same rates as a network provider. Sanghani claims that, before he treated McGuire, he obtained gap approval from United. However, Sanghani alleges United has not paid him pursuant to the gap approval agreement.

In the Petition, under La. R.S. 22:1821, Sanghani sought $5,310.82 in benefits from United. Sanghani also requested penalties, attorney's fees, interest, and costs.

In the proposed Amended Complaint, Sanghani added The Associates' Health and Welfare Plan (the "Plan") – the employee welfare benefits plan allegedly administered by United – as a defendant. Sanhani also added claims against United and the Plan for: (1) ERISA benefits pursuant to 29 U.S.C. § 1132(a)(1)(B); and (2)

2

damages for "negligent or intentional acts" under La. C.C. art. 2315 for Defendants' alleged "bait and switch tactics" and failure to honor a "promise to pay" benefits. United maintains this second claim is preempted by ERISA as well.

United removed, alleging this Court has original jurisdiction over Sanghani's claims. United then moved to dismiss, arguing Sanghani's claim under La. R.S. 22:1821 is completely preempted by ERISA. In response, Sanghani admits ERISA preempts his claim under La. R.S. 22:1821. However, Sanghani submitted – and later sought leave to file – the proposed Amended Complaint. Sanghani argues his new claim under La. C.C. 2315 is not preempted by ERISA.

## II. Law and Analysis

### A. Standards governing the Motion to Dismiss.

A court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6). "[A] complaint will survive dismissal for failure to state a claim if it contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Legate v. Livingston, 822 F.3d 207, 210 (5th Cir. 2016) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)) (internal citation and quotation omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. The court must view all well-pleaded facts in the light most favorable to the plaintiff. Yumilicious Franchise, L.L.C. v. Barrie, 819 F.3d 170, 174 (5th Cir. 2016). Moreover, a motion to dismiss is an

appropriate mechanism to raise the affirmative defense of ERISA preemption. See Parra v. Mountain States Life Ins. Co. of Am., 52 F.3d 1066 (5th Cir. 1995).

### B. Sanghani's state law claims are preempted by ERISA.

#### 1. ERISA's preempts duplicative or conflicting state law claims.

"The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." Aetna Health Inc. v. Davila, 542 U.S. 200, 208, 124 S.Ct. 2488, 2495, 159 L.Ed.2d 312 (2004). Therefore, ERISA contains "expansive" preemption provisions "which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" Id. (quoting Alessi v. Raybestos–Manhattan, Inc., 451 U.S. 504, 523, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981)). As a general rule, courts broadly construe ERISA's preemption provisions. See Manning v. Hayes, 212 F.3d 866, 870 (5th Cir. 2000).

There are two types of ERISA preemption: complete preemption under 29 U.S.C. § 1132(a), and conflict (or "express") preemption under 29 U.S.C. § 1144(a). See Ellis v. Liberty Life Assur. Co. of Boston, 394 F.3d 262, 275 n.34 (5th Cir. 2004). The Fifth Circuit has described the distinction between complete and express preemption as follows:

> ERISA may occupy a particular field, which results in complete preemption under 29 U.S.C. § 1132(a). Section 502 [1132(a)], by providing a civil enforcement cause of action, completely preempts any state cause of action seeking the same relief, regardless of how artfully pleaded as a state action. Complete preemption permits removal to federal court because the cause of action arises under federal law. . . .
>
> In contrast, ERISA preempts a state law action under 29 U.S.C. § 1144(a) when it conflicts with the state law. Conflict preemption does

4

not allow removal to federal court but is an affirmative defense against claims that are not completely preempted under Section 1132(a).

Id. (internal citations and quotations omitted).

2. **Sanghani's claim under La. R.S. 22:1821 is preempted by ERISA.**

United contends, and Sanghani admits, that Sanghani's claim under La. R.S. 22:1821 is completely preempted by ERISA. The Court agrees. See, e.g., Wright v. Louisiana Corrugated Products, LLC, 59 F.Supp.3d 767, 776 (W.D. La. 2014) ("Courts consistently have recognized that ERISA preempts a claim for unpaid benefits, penalties, and fees under Louisiana Revised Statute § 22:657 (now § 22:1821)."). Accordingly, Sanghani's claim under La. R.S. 22:1821 should be dismissed with prejudice as preempted. See Trahan v. Metro. Life Ins. Co., CV 15-2803, 2016 WL 3453662, at *1 (W.D. La. June 20, 2016).

3. **Sanghani's claim under La. C.C. 2315 is not preempted by ERISA.**

United also contends that Sanghani's claim under La. C.C. art. 2315 is completely and expressly preempted by ERISA. In analyzing this argument, the nature of Sanghani's claim is crucial.

The text of the claim states:

> In the alternative, and in the event that no Plan benefits are due pursuant to the terms of the plan, SANGHANI seeks recovery from UNITED for its gap approval process that constituted a promise to pay benefits that induced SANGHANI to provide services that UNITED knew would not be paid. This bait and switch tactic caused SANGHANI to reasonably conclude that it would be paid for services and to rely upon UNITED to secure payment for such services as administrator of the Plan. Thus, UNITED is personally responsible for its own negligent or intentional acts, under La. C.C. Art. 2315, for causing SANGHANI to provide services that were not covered and for the payment for those services.

5

(Doc. 15-1, p. 4). Sanghani attempts to distance this claim from the terms of the Plan by introducing the claim as an alternative one, available only if "no Plan benefits are due pursuant to the terms of the plan," and referencing payment for "services that were not covered" by the Plan.

Although somewhat unclear, the claim most closely resembles a claim for "negligent misrepresentation" under La. Civ. Code art. 2315.[1] See Wooley v. Lucksinger, 2006-1140 (La.App. 1 Cir. 12/30/08, 379), 14 So.3d 311, 556, writ granted, 2009-0586 (La. 12/18/09), 23 So.3d 951, and writ granted, 2009-0585 (La. 12/18/09), 23 So.3d 951, and writ granted, 2009-0584 (La. 12/18/09), 23 So.3d 952, and writ granted, 2009-0571 (La. 12/18/09), 23 So.3d 953, and aff'd in part, rev'd in part on other grounds, 2009-0571 (La. 4/1/11), 61 So.3d 507. "To recover for negligent misrepresentation, 'there must be a legal duty on the part of the defendant to supply correct information, a breach of that duty, and damage to the plaintiff cause by the breach.'" Hopkins v. Coco, 2014-1191 (La.App. 4 Cir. 7/29/15, 4), 174 So.3d 201, 203

---

[1] To the extent Sanghani claims United's alleged misrepresentations were intentional, that claim would sound in "fraud." Given the ambiguity of Sanghani's claim, it is difficult to conclude that Sanghani intended to assert a claim for negligent misrepresentation rather than fraud. But the Court reaches that conclusion for good reason.

Sanghani's references to "bait and switch" tactics, knowledge of future non-payment despite a "promise to pay," and "intent," all loosely signify a fraud claim. But Sanghani also uses terms indicating negligence, and cites La. Civ. Code art. 2315, which could only underlie a claim for negligent misrepresentation. A fraud claim would be governed by La. Civ. Code art. 1953, which is not cited.

As explained below, the distinction between intent and negligence would not alter the Court's conclusion regarding ERISA preemption. Either claim would not be preempted. But that is only incidental, and only relevant for purposes of these Motions. Of course, the distinction between fraud and negligence could be critical for other aspects of this litigation. For ease of reference in this ruling, the Court refers to the claim only as a "misrepresentation" claim.

(quoting Hughes v. Goodreau, 01–2107, p. 19 (La.App. 1 Cir. 12/31/02), 836 So.2d 649, 663).

### a. Complete preemption does not apply.

United asserts – without citation – that Sanghani's "general tort claim under La. Civ. Code art. 2315 . . . is completely preempted by ERISA . . . ." (Doc. 18, p. 2). The Court disagrees.

"[S]tate law claims seeking relief within the scope of ERISA § 502(a)(1)(B) are completely preempted." Arana v. Ochsner Health Plan, 338 F.3d 433, 437 (5th Cir. 2003). That relief includes claims by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Accordingly, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted." Davila, 542 U.S. at 209.

Here, by its express terms, Sanghani's misrepresentation claim does not apply to benefits or rights that Sanghani may have (as assignee) under the terms of the Plan. Rather, the claim is specifically limited to rights which it may have acquired outside the terms of the Plan – through an extra-contractual "gap approval" process – as a result of representations made to Sanghani by United. Sanghani's claim, in this limited respect, does not duplicate, supplement, or supplant ERISA's civil

7

enforcement scheme. In fact, Sanghani asserts a separate claim for benefits under ERISA's civil enforcement provision. Complete preemption does not apply.

### b. Express preemption does not apply.

Under 29 U.S.C. § 1144(a), ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." A state law claim "relates to" an employee benefit plan when it "has a 'connection with or reference to such plan.'" Hubbard v. Blue Cross & Blue Shield Assoc., 42 F.3d 942, 945 (5th Cir. 1995) (quoting Corcoran v. United Healthcare, Inc., 965 F.2d 1321, 1328–29 (5th Cir. 1992)).

While this standard should be broadly construed, it should not be stretched to its "outer limit." Hobson v. Robinson, 75 Fed.Appx. 949, 952 (5th Cir. 2003). "Although the term 'relate to' is intended to be broad, 'pre-emption does not occur . . . if the state law has only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability.'" Mayeaux v. Louisiana Health Serv. & Indem. Co., 376 F.3d 420, 432 (5th Cir. 2004) (quoting New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 661, 115 S.Ct. 1671, 1680, 131 L.Ed.2d 695 (1995)). If there is some connection between a state law claim and an ERISA plan, a court must then "evaluate the nexus between ERISA and state law in the framework of ERISA's statutory objectives." Mayeaux, 376 F.3d at 432.

To determine whether a claim is expressly preempted by ERISA, a court must consider whether: "(1) [t]he state law claim addresses an area of exclusive federal

8

concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claim directly affects the relationships among traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries." Mayeaux v. Louisiana Health Serv. & Indem. Co., 376 F.3d 420, 432 (5th Cir. 2004). Claims which relate "only indirectly to the ERISA plan," and which "do not require either plan interpretation or administration," are generally not preempted. See Hobson, 75 Fed.Appx. at 956.

Sanghani's claim implicates a nuanced line of ERISA jurisprudence. Three cases in that line of jurisprudence most closely inform the analysis. First, in Memorial Hospital System v. Northbrook Life Insurance Co., the Fifth Circuit held that a claim for deceptive and unfair trade practices under Texas law was not preempted by ERISA. See 904 F.2d 236, 238 (5th Cir. 1990). The court explained that ERISA preempts claims concerning "improper processing of a claim for plan benefits," and various claims (including negligent misrepresentation) "that have the effect of orally modifying the express terms of an ERISA plan and increasing plan benefits for participants or beneficiaries who claim to have been misled." Id. at 245. But the court approached the unfair trade practices claim differently.

The arguments rejected by the Memorial court are the most relevant in this case. If a provider's damages will be "measured in part by the amount of benefits it would have received had there been no misrepresentation regarding coverage," express preemption does not apply. Id. at 247. In that context, damages establishes only an "incidental relation" to an ERISA plan, and have no bearing upon a plan

9

participant's "actual right to benefits under the plan." Id. Further, the court reasoned that "[i]f providers have no recourse under either ERISA or state law in situations such as the one sub judice (where there is no coverage under the express terms of the plan, but a provider has relied on assurances that there is such coverage), providers will be understandably reluctant to accept the risk of non-payment, and may require up-front payment by beneficiaries—or impose other inconveniences—before treatment will be offered." Id.

The Memorial court also distinguished between claims asserted by providers as assignees, and claims asserted as independent third parties. See id. at 250. providers, on their own, are not among the "traditional ERISA entities." See id. As an assignee, the provider asserted a derivative benefits claim to enforce the participant's rights under the plan. See id. The provider's unfair trade practices claim, however, was asserted independently of the assignment, and therefore, did not implicate, or seek to modify the ERISA plan. See id. Accordingly, the unfair trade practices claim was not preempted by ERISA. Id.

Second, in Transitional Hosps. Corp. v. Blue Cross & Blue Shield of Texas, Inc., the Fifth Circuit held that misrepresentation claims were not preempted by ERISA. See 164 F.3d 952, 954 (5th Cir. 1999). The plaintiff, a medical provider, claimed that the defendants misrepresented the level of benefits the provider would receive. See id. at 953. Specifically, the provider was assured 100% payment for a participant's hospitalization. Id. According to the provider, the misrepresentations occurred both before and during the participant's treatment. Id. After the provider submitted its

claim, however, the defendants determined that the provider was a "nonparticipating hospital." Id. The provider was ultimately paid approximately .5% of its total claim. See id. at 955.

The Fifth Circuit held that, "when there is some coverage , . . . the court [must] take the next analytical step and determine whether the claim in question is dependent on, and derived from the rights of the plan beneficiaries to recover benefits under the terms of the plan." Id. The provider's misrepresentation claims were "not dependent on or derived from [the participant's] right to recover benefits under the . . . plan." Id. Instead, the provider alleged that, "[t]o the extent [the participant] is not covered by the Policy . . . Defendants made misrepresentations actionable under common law and the Texas Insurance Code." Id. Accordingly, the provider's misrepresentation claims were not preempted by ERISA; the provider's breach of contract claims were preempted. Id.

Finally, in Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co., the Fifth Circuit clarified that, for purposes of preemption, there is no distinction between a misrepresentation claim concerning the "existence of coverage" or the "extent of coverage." See 662 F.3d 376, 384 (5th Cir. 2011), opinion reinstated in part on reh'g, 698 F.3d 229 (5th Cir. 2012). Rather, the court reaffirmed that the touchstones of conflict preemption are: (1) whether a claim concerns an area of exclusive federal concern (including the interpretation of an ERISA plan); and (2) whether the claim concerns the relationships traditionally regulated by ERISA. See id. at 385-86.

The Access court's analysis is, again, instructive:

11

The merits of Access's misrepresentation claims do not depend on whether its services were or were not fully covered under the patients' plans. If the plans provide less coverage than United's agents indicated, Access must still prove that it was reasonable to rely on their statements as representations of how much and under what terms Access could expect to be paid. If the plans do provide the same level of coverage United indicated, Access may nevertheless seek to prove its misrepresentation claims by showing that United's statements regarding coverage, while accurate, were nevertheless misleading because United's agents omitted to mention that, covered or not, Access's services would not be reimbursed. Consultation of the plans' terms is thus not necessary to evaluate whether United's agents' statements were misleading. The finder of fact need only determine (1) the amount and terms of reimbursement that Access could reasonably have expected given what could fairly be inferred from the statements, and (2) whether United's subsequent disposition of the reimbursement claims was consistent with that expectation.

The state law underlying Access's misrepresentation claims does not purport to regulate what benefits United provides to the beneficiaries of its ERISA plans, but rather what representations it makes to third parties about the extent to which it will pay for their services. To prevail on these claims, Access need not show that United breached the duties and standard of conduct for an ERISA plan administrator, because Access's alleged right to reimbursement does not depend on the terms of the ERISA plans. It is immaterial whether the alleged statements regarding the extent that the patients' plans covered Access's services were correct or incorrect as descriptions of the plans' terms. As assurances of how much Access would be paid, the statements are belied by United's subsequent refusal to reimburse some or all of Access's claims. United points out that it is a plan fiduciary and its decisions regarding what claims to pay constitute administration of an ERISA plan that is governed by that statute. The critical distinction, however, is not whether the parties to a claim are traditional ERISA entities, but whether the claims affect an aspect of a relationship that is comprehensively regulated by ERISA. We thus rejected essentially the same argument in Memorial, because the "obligations of ERISA fiduciaries run only toward the plan, for the benefit of participants and beneficiaries." Moreover, a one-time recovery for Access on its state-law misrepresentation claims will not affect the on-going administration or obligations of the ERISA plans that United administers, because the recovery "in no way expands the rights of the patient to receive benefits under the terms of the health care plan." Id. at 246. State law claims of the kind asserted in Memorial, Transitional, and this case concern the

12

> relationship between *386 the plan and third-party, non-ERISA entities who contact the plan administrator to inquire whether they can expect payment for services they are considering providing to an insured. The administrator's handling of those inquiries is not a domain of behavior that Congress intended to regulate with the passage of ERISA, which "imposes no fiduciary responsibilities in favor of third-party health care providers regarding the accurate disclosure of information, or, indeed, regarding any other matter." Memorial, 904 F.2d at 247.
>
> It is difficult to see how consultation of the plan's terms would be necessary to determine the amount of Access's recovery, given that the compensatory recovery Access seeks can be measured by the cost of the services it alleges United induced it to provide. If consultation of the plans is necessary, United concedes that this, without more, does not require preemption. Id. (explaining that the need to consult an ERISA plan in order to determine damages shows only an "incidental relation . . . insufficient on these facts to require a finding of preemption.")

Id. at 386-86.

Applying this line of precedent, and returning always to the two touchstones of ERISA preemption listed above, our sister courts distinguish between claims to recover benefits and claims independent of a participant's right to recover benefits. Provider claims which flatly seek to recover plan benefits are preempted by ERISA. See, e.g., First Choice Surgery Ctr. of Baton Rouge, LLC v. United Healthcare Servs., Inc., 12-CV-0065, 2012 WL 3109483, at *4–5 (M.D. La. July 30, 2012) ("In this case, the plaintiffs' state court petition clearly shows that their claims arise from allegations that United "failed to properly pay or process" the insurance claim stemming from the patient's medical treatments at the plaintiffs' facility. Doc. 1, att. 2, p. 4–5. Plaintiffs' claims address the right to receive benefits under the patient's ERISA plan and the claims thus satisfy the first prong for federal preemption."). Provider claims for independent torts – even when the provider is also an assignee,

and even if reference to an ERISA plan is necessary – are not preempted by ERISA. See, e.g., Percle v. Performance Energy Servs., L.L.C., CIV.A. 10-2777, 2011 WL 337891, at *5 (E.D. La. Jan. 31, 2011) ("Plaintiff's misrepresentation claims do not require that Plaintiff prove that Performance improperly administered the plan; Plaintiff need only demonstrate that Performance misrepresented the scope of coverage. In addition . . . Plaintiff's misrepresentation claims against Performance do not contradict congressional intent because Plaintiff's claims do not require interpretation or administration of the ERISA policy.").

Here, Sanghani's misrepresentation claim falls into the latter category. The claim "does not depend on the terms of" the Plan. See Access, 662 F.3d at 385. Rather, the claim depends upon representations made to Sanghani by United regarding the extent to which United intended to pay for Sanghani's services. See id. Because Sanghani's claim concerns alleged tortious acts which are independent of any Plan obligations, the claim does not pertain to an area of exclusive federal concern. And Sanghani – as a provider seeking redress for misrepresentations, rather than an assignee seeking to recover benefits – is not a traditional ERISA entity.

Moreover, the claim is not preempted merely because Sanghani is an assignee as to a separate claim, because Sanghani may recover benefits equal to those the Plan participant may have recovered, or even because the "gap approval" process made reference to the Plan. See Ctr. for Restorative Breast Surgery, L.L.C. v. Humana Health Ben. Plan of Louisiana, Inc., CIV.A. 10-4346, 2014 WL 1276503, at *6–7 (E.D.

14

La. Mar. 27, 2014), reconsideration denied, CIV.A. 10-4346, 2014 WL 2619538 (E.D. La. June 10, 2014). Rather, like the misrepresentation claims in Memorial, Transitional, and Access, Sanghani's misrepresentation claim falls outside ERISA's preemptive scope.

C. <u>Sanghani's Motion for Leave to Amend should be granted.</u>

Under Fed. R. Civ. P. 15(a)(2), "[t]he court should freely give leave when justice so requires." A court should ordinarily, and liberally, grant leave to amend "absent some justification for refusal." Whitley v. Hanna, 726 F.3d 631, 648 (5th Cir. 2013). Such justifications may include "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed [or] undue prejudice to the opposing party by virtue of allowance of the amendment.'" Id. (quoting United States ex rel. Willard v. Humana Health Plan of Tex. Inc., 336 F.3d 375, 386 (5th Cir. 2003)). "Leave to amend also may be denied when amendment would be futile." Whitley, 726 F.3d at 648.

In this case, Sanghani has moved to amend only once, shortly after United filed its Motion. Sanghani has not repeatedly failed to cure deficiencies, and has not caused undue delay. There is also no indication of bad faith or dilatory motive. And given the rulings above – that Sanghani's original claim under La. R.S. 22:1821 is preempted, but that his claims for benefits and misrepresentation are not preempted – Sanghani's proposed amendment would not be futile. Accordingly, Sanghani's Motion should also be granted.

### III. Conclusion

For the foregoing reasons,

IT IS HEREBY RECOMMENDED that the Motion to Dismiss or, in the Alternative, For Summary Judgment (Doc. 10) filed by Defendant, United Healthcare Services, Inc., be GRANTED, and that Plaintiff's claim under La. R.S. 22:1821 be DISMISSED WITH PREJUDICE as preempted.

IT IS FURTHER RECOMMENDED that the Motion for Leave to Amend Complaint (Doc. 15) filed by Plaintiff, Sanat V. Sanghani, MD, LLC be GRANTED, and that Plaintiff's proposed Amended Complaint (Doc. 15-1) be filed into the record.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this 30th day of August, 2016.

Joseph H.L. Perez-Montes
United States Magistrate Judge

17